IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

NICHOLAS ALEXANDER WIMBISH,        C/A:    26-cv-20002
Reg. No. 45133-511,

     Plaintiff,

v.

FEDERAL BUREAU OF PRISONS;
WILLIAM K. MARSHALL III, in his official
capacity as Director, BOP,
WARDEN, FCI MIAMI (LOW), in his official capacity;
CLINICAL DIRECTOR, FCI MIAMI (LOW), in his official capacity;
HEALTH SERVICES ADMINISTRATOR, FCI MIAMI (LOW),
in his official capacity,

     Defendants.
_____/

## EMERGENCY MOTION/REQUEST FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION FOR MEDICAL CARE

Plaintiff Nicholas Alexander Wimbish ("Mr. Wimbish"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 65 and 18 U.S.C. § 3626, respectfully moves this Court on an emergency basis for a Temporary Restraining Order ("TRO") and/or Preliminary Injunction requiring Defendants to immediately provide constitutionally adequate medical care for an acute and potentially emergent gastrointestinal condition and related pain-management needs.

In support, Mr. Wimbish states:

## I.   INTRODUCTION AND NATURE OF EMERGENCY RELIEF SOUGHT

Mr. Wimbish is a federal inmate newly designated to FCI Miami Low. Since arriving on December 19, 2025, he has experienced severe constipation with escalating symptoms, including bloating and abdominal pain.  Since December 22, he has not had a bowel movement.  He reports to counsel that he feels pain in his liver and kidney areas and that he feels bloated.  He is not passing gas either.  He has sought urgent medical care within the facility and has been rebuffed, delayed, and minimized. The facility's response has included (a) refusal to permit access to medical unless he is "having a heart attack," (b) no response to written notes to medical and the warden's office, and (c) a limited encounter in which a practitioner downplayed the severity of a week without bowel movement and proposed magnesium citrate—an agent Mr. Wimbish reports causes violent vomiting—while declining a tolerated alternative.  Counsel is informed that Mr. Wimbish saw a doctor on December 30, 2025, who did not appear to appreciate the seriousness of his condition.   Counsel is now informed that Nicholas has attempted to eat but threw up last night, the night of December 30, indicating a deterioration of his condition.  As of today, prison consultant Christopher Zoukis has spoken with Counselor Elenberg, who is unaware of any additional medical care that Mr. Wimbish has received.  Zoukis has also reached out to Rick De Aguiar, FCI Miami Low Counsel,

but has not received any response from him.  Zoukis also contacted Latease Bailey-Close, Southeast Regional Counsel, who has also not responded.  In short, counsel have been unable to make meaningful contact with anyone at the facility who can confirm that Mr. Wimbish is being adequately cared for.  Alternatively, Mr. Wimbish has expressed to his family via Corrlinks messaging that he is concerned he will develop a perforated bowel unless he is immediately treated.

This Motion seeks narrow, immediate, medically focused relief: (1) prompt off-site evaluation and treatment at a hospital or equivalent acute-care setting for suspected fecal impaction/obstruction and to rule out complications; and (2) interim and continuing medical accommodations that are medically necessary and feasible, including an appropriate bowel regimen tailored to the patient, and essential pain-management supports for documented spinal conditions that are materially worsening his functioning and psychological stability.

Absent immediate judicial intervention, Mr. Wimbish faces a substantial risk of serious harm, including fecal impaction, bowel obstruction, and other complications, and worsening physical pain with attendant psychological deterioration.

## II.    JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Mr.
   Wimbish seeks prospective injunctive relief to remedy ongoing violations of the

Eighth Amendment to the United States Constitution. See *Estelle v. Gamble*, 429 U.S. 97 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994).

2. To the extent necessary, jurisdiction also lies under 28 U.S.C. § 1361 (mandamus) to compel federal officials to perform non-discretionary duties to provide constitutionally adequate medical care and to act in the face of serious medical need, and under the waiver of sovereign immunity for non-monetary relief in 5 U.S.C. § 702.

3. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(e) and/or § 1391(b) because Defendants (federal officers/agencies) are located here and the events and omissions giving rise to the claims occurred at FCI Miami Low within this District.

## III.   RELEVANT FACTS

### A. Mr. Wimbish's Incarceration and Medical Background

4. Mr. Wimbish self-surrendered into federal custody at FCI Miami Low on December 19, 2025. (See Affidavit of Gary L. Wimbish, Esq., dated Dec. 31, 2025 ("G. Wimbish Aff.").)

5. Mr. Wimbish has a long history of gastrointestinal problems, including reduced motility and constipation dating to early childhood. He has been followed

intermittently since 2002 by gastroenterologist Karoly Horvath, M.D. (See, e.g., Horvath records and reports, including Jan. 2002 and Oct. 2017 clinical materials.)

6. Mr. Wimbish has Autism Spectrum Disorder (ASD) and related vulnerabilities; he is susceptible to significant stress and decompensation when medical needs and accommodations are not met. (See Troy Noonan, M.D. Affidavit (Nov. 6, 2025); letter of Susana Lozada-Murray, Psy.D. (Dec. 26, 2025).)

## B. Current Acute GI Crisis: Eight Days Without Bowel Movement, Pain, Bloating

7. Since his arrival at FCI Miami Low, Mr. Wimbish has experienced severe constipation. As of December 31, 2025, he reports eight consecutive days without a bowel movement, with bloating and abdominal pain. These symptoms have materially affected his quality of life and caused him to skip meals. (G. Wimbish Aff.; monitored communications referenced therein.)

8. Mr. Wimbish and his family report that the prison diet differs substantially from the diet plan that had successfully controlled his GI problems, including higher sugar content and lack of the regimen previously associated with regular bowel movements. (G. Wimbish Aff.)

## C. Repeated Attempts to Obtain Care and Institutional Delay/Minimization

9. Between December 19 and December 30, 2025, Mr. Wimbish sought medical evaluation repeatedly. He reports that staff refused to allow him to go to medical "unless he was having a heart attack." (G. Wimbish Aff.)

10. On December 29, 2025, Mr. Wimbish reports he sent written notes to medical and to the warden's office seeking help and received no response. He also spoke with his case manager (Mr. Kost) about his need for medical evaluation; he was told to try to be seen at medical, without assistance. (G. Wimbish Aff.)

11. On December 29, 2025, at 2:43 p.m., counsel's consultant Christopher Zoukis called FCI Miami Low and attempted to speak to Health Services to secure emergency care; staff refused to transfer the call. He explained the emergent concern and request for immediate evaluation and possible hospital transport to the Operations Lieutenant, who said staff would look into it and call back; no call was received. (G. Wimbish Aff.)

12. On December 29, 2025, at 2:51 p.m., Mr. Zoukis left a voicemail for Bureau counsel Rick De Aguiar regarding the emergency; no response was received. (G.

Wimbish Aff.) Zoukis attempted again on December 31, 2025, at 2:33 p.m., and no response has been received.

13. On December 30, 2025, Mr. Wimbish reported that medical relayed he should obtain over-the-counter medication from the commissary. (Email from Mr. Wimbish dated Dec. 30, 2025 (Exhibit C in the G. Wimbish Aff. packet).)

14. On December 30, 2025, at approximately 12:30 p.m., Mr. Wimbish reported that he was seen by a family medicine practitioner at medical and was told he would be given magnesium citrate "tomorrow." Mr. Wimbish reported that magnesium citrate has caused him to vomit violently in the past. He reported that magnesium glycinate has worked well for him previously, but he was told it was not available and not an option. He reports that the practitioner stated he "should not be worried" about a week without a bowel movement and that "people go through this all of the time," and advised him to drink more water, which he had already been doing. (G. Wimbish Aff.)

15. On December 31, 2025, at 2:38 p.m., Mr. Zoukis called and left a voicemail for Bureau regional counsel Latease Bailey-Close regarding the emergency; no response was received.

**D. Separate but Related Pain Crisis: Spinal Conditions and Lack of Basic Supports**

16. Mr. Wimbish has scoliosis and kyphosis with longstanding chronic pain that previously required ongoing chiropractic treatment/spinal decompression and basic orthopedic supports (orthopedic mattress, pillows, inserts). His family reports he is now in constant and severe pain without these measures and that it is contributing to stress and psychiatric decompensation. (G. Wimbish Aff.; Letter of medical necessity by Brian Alexander, D.C. (Downtown Tampa Wellness Center).)

**E. Supporting Medical Documentation**

17. Dr. Karoly Horvath's prior GI management materials include "clean-out" and maintenance stool softener therapy instructions relevant to constipation management history. (Horvath 2017 office notes.)

18. Dr. Brian Alexander, D.C., has provided a letter documenting the medical necessity of continued evaluation and treatment for chronic neck/upper and low back pain and recommending chiropractic adjustments and spinal decompression. (Alexander letter.)

19. Dr. Susana Lozada-Murray, Psy.D., reports that incarceration has exacerbated symptoms of acute stress disorder/PTSD, with emails suggesting looming psychotic episode and potential for self-harm risk. (Lozada-Murray letter.)

20. Treating psychiatrist Troy Noonan, M.D., documented multiple psychiatric diagnoses and medication sensitivities, and a high risk of decompensation under stressors and inadequate care. (Noonan Aff.)

## IV.   LEGAL STANDARD

21. A TRO and/or preliminary injunction is appropriate when the movant shows: (1) a substantial likelihood of success on the merits; (2) irreparable injury unless the injunction issues; (3) the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest. See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000).

22. In prisoner cases, any prospective relief must comply with the Prison Litigation Reform Act ("PLRA"), including that it be narrowly drawn, extend no further than necessary to correct the violation, and be the least intrusive means necessary. 18

U.S.C. § 3626(a)(1)(A). Preliminary injunctive relief under the PLRA is similarly constrained and is time-limited absent required findings. 18 U.S.C. § 3626(a)(2).

## V.     ARGUMENT

### A. Mr. Wimbish Is Likely to Succeed on the Merits of His Eighth Amendment Claim

1. <u>Severe Constipation with Prolonged Absence of Bowel Movement, Pain, and Bloating Is a Serious Medical Need</u>

23. The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle*, 429 U.S. at 104.

24. A serious medical need is one that has been diagnosed by a physician as requiring treatment or is so obvious that even a lay person would recognize the need for medical attention, or one that, if left unattended, poses a substantial risk of serious harm. See, *e.g., Goebert v. Lee Cnty.*, 510 F.3d 1312 (11th Cir. 2007); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999).

25. Eight days without a bowel movement accompanied by abdominal pain and bloating presents an objectively serious condition requiring prompt medical evaluation to rule out fecal impaction, bowel obstruction, dehydration/electrolyte derangements, or other emergent complications. The duration and symptom

constellation make this far more than a routine discomfort or minor complaint; it is a foreseeable escalation requiring clinician-directed assessment.

2. The Record Demonstrates Deliberate Indifference: Repeated Refusals, Delay, and Minimization of an Emergency Condition

26. Deliberate indifference includes: (a) intentional refusal to provide care; (b) delay of treatment for non-medical reasons; (c) grossly inadequate care; or (d) a decision to take an easier but less efficacious course of treatment in the face of a serious medical need. See *Farmer*, 511 U.S. at 837; *McElligott*, 182 F.3d at 1255; *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700 (11th Cir. 1985); *Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004).

27. Here, Mr. Wimbish reports repeated attempts to obtain evaluation and care and being denied access to medical unless he was "having a heart attack." The denial of access to evaluation for a week-long cessation of bowel movements and abdominal pain is, at minimum, deliberate delay.

28. The December 30, 2025, response described—downplaying the seriousness of a week without bowel movement, deferring treatment until "tomorrow," and insisting on a medication the patient reports causes violent vomiting while refusing an alternative he reports he tolerates—reflects an easier, less efficacious course and/or

reckless disregard of substantial risk. A constitutionally adequate response requires timely assessment, appropriate diagnostics where indicated, and a bowel regimen tailored to the patient's history and adverse reactions.

29. Further, the record reflects institutional inaction despite outside notification by counsel's consultant and attempts to reach Health Services and Bureau counsel, with no response and no emergent intervention.

3. <u>Ongoing Severe Back Pain Without Basic Supports Also Constitutes a Serious Medical Need and Deliberate Indifference</u>

30. Chronic spinal conditions with severe pain, functional limitation, and medically documented need for ongoing care can constitute a serious medical need, particularly where there is substantial pain and deterioration. See *McElligott*, 182 F.3d at 1257 (unnecessary and wanton infliction of pain includes deliberate indifference to severe pain).

31. The Alexander letter documents chronic neck/upper and low back pain with functional impairment and recommends ongoing chiropractic supervised treatment and decompression as medically necessary. The refusal to provide evaluation and reasonable pain-management supports, including basic bedding/orthopedic

supports, exacerbates pain and increases risk of decompensation given Mr. Wimbish's autism-related vulnerabilities and psychiatric fragility.

    4. <u>Prospective Injunctive Relief Is Proper Against Federal Officials in Their Official Capacities</u>

32. Mr. Wimbish seeks prospective relief to stop ongoing unconstitutional conduct and to require constitutionally adequate medical care. Courts may award prospective injunctive relief against federal officers in their official capacities to remedy constitutional violations. See, *e.g.*, *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682 (1949) (officer-suit doctrine); see also 5 U.S.C. § 702 (waiver of sovereign immunity for non-monetary relief).

33. This case does not seek damages in a *Bivens* extension; it seeks immediate, narrow medical-care relief to prevent serious harm.

## B. Mr. Wimbish Will Suffer Irreparable Harm Absent Immediate Relief

34. Irreparable harm exists where injury is imminent and cannot be remedied by later money damages. See *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283 (11th Cir. 1990).

35. Untreated prolonged constipation with abdominal pain and bloating risks acute complications (including fecal impaction and bowel obstruction) that may rapidly become life-threatening or require emergent invasive treatment. Delayed evaluation increases the risk of severe outcomes and unnecessary suffering.

36. Separately, ongoing severe unmanaged pain and escalating psychiatric decompensation—particularly with documented vulnerabilities and heightened self-harm risk concerns—constitute irreparable harm warranting immediate intervention.

### C. The Balance of Harms Strongly Favors Limited Medical Intervention

37. The burden on Defendants to transport Mr. Wimbish for immediate evaluation and to implement a medically appropriate bowel regimen and basic pain supports is modest compared to the substantial risk of severe injury, hospitalization under emergent conditions, or irreversible harm if care is delayed.

38. The requested relief is narrowly aimed at medical evaluation and treatment and does not interfere with legitimate penological objectives beyond what is necessary to prevent constitutional injury.

### D. The Requested Relief Complies with the PLRA's Narrow Tailoring Requirements

39. The PLRA requires that prospective relief be narrowly drawn, extend no further than necessary to correct the violation, and be the least intrusive means necessary. 18 U.S.C. § 3626(a)(1)(A).

40. Mr. Wimbish requests only those measures necessary to address (a) an acute suspected GI emergency requiring off-site evaluation and (b) limited, medically indicated accommodations necessary to prevent recurrence and manage severe pain—without dictating long-term programming or broad institutional changes.

### E. Exhaustion Under 42 U.S.C. § 1997e(a) Does Not Bar Emergency Relief Where Remedies Are Unavailable and the Harm Is Imminent

41. The PLRA requires exhaustion of "available" administrative remedies. 42 U.S.C. § 1997e(a). Where administrative remedies are not "available," exhaustion is not required. *Ross v. Blake*, 578 U.S. 632 (2016).

42. Here, the facts demonstrate unavailability in practice for emergent care: Mr. Wimbish repeatedly sought urgent care through staff requests and written notices to medical and the warden's office without response, and he reports being denied access to medical unless he was "having a heart attack." Under *Ross*, when officials

thwart inmates from taking advantage of a process through "machination, misrepresentation, or intimidation," or where the process is a dead end, remedies are unavailable.

43. Further, the administrative remedy process cannot provide timely relief for a suspected acute medical emergency requiring immediate evaluation. In such circumstances, a TRO is necessary to preserve life and health while any administrative process proceeds.

## VI.    REQUEST FOR EMERGENCY RELIEF

Mr. Wimbish respectfully requests that the Court enter a TRO and/or preliminary injunction ordering Defendants, and all persons acting in concert with them, to do the following:

### A. Immediate Off-Site Evaluation and Treatment for Suspected Fecal Impaction/Obstruction

1. Within 6 hours (or as soon as practicable) of entry of the Order, transport Mr. Wimbish to a local hospital emergency department or equivalent acute-care facility for prompt physician evaluation of severe constipation with eight days without a bowel movement and associated abdominal pain/bloating.

2. At the off-site facility, require that Defendants permit clinicians to perform medically appropriate diagnostics and treatment, which may include (as clinically indicated) abdominal exam, rectal exam, labs (CBC, CMP/electrolytes), imaging (abdominal x-ray and/or CT), IV fluids, antiemetics, and evidence-based constipation/impaction management including enema/clean-out and/or disimpaction if indicated.

3. Require Defendants to ensure Mr. Wimbish receives timely follow-up based on discharge instructions, including GI referral if recommended.

**B. Interim Facility-Based Bowel Regimen Tailored to the Patient (Pending and After Hospital Evaluation)**

4. Pending transport/off-site evaluation, order Health Services to perform a same-day on-site assessment (vitals, abdominal exam, review of hydration status, medication history, adverse reactions) and implement a medically appropriate, clinician-directed bowel regimen consistent with community standards.

5. Order Defendants to document and consider Mr. Wimbish's reported adverse reaction to magnesium citrate (violent vomiting) and to use clinically appropriate alternatives when medically indicated, including but not limited to stool

softeners/osmotic agents/other laxatives and antiemetics as appropriate, consistent with provider judgment and formulary.

6. Order Defendants to ensure access to adequate hydration and medically appropriate diet instructions during any bowel clean-out (as medically directed), and to ensure that any commissary-dependent plan does not become an obstacle to necessary medical treatment.

### C. Medically Necessary Diet/Probiotic Accommodation

7. Order Defendants to schedule, within 7 days, a consultation with medical/dietary services (and GI consult as indicated) to evaluate reasonable dietary accommodations to reduce recurrence of severe constipation, including consideration of:

- a lower-sugar diet consistent with medical needs, where feasible;
- access to medically indicated probiotics or equivalent medically appropriate alternatives (subject to medical evaluation and security policies);
- any other bowel-motility supportive measures consistent with formulary and BOP policy.

### D. Pain Management and Basic Supports for Documented Spinal Conditions

8. Order Defendants to provide, within 48 hours, a medical evaluation for severe back pain associated with scoliosis/kyphosis and implement a pain-management plan, which may include:

- clinically appropriate analgesics/anti-inflammatory measures as medically indicated;

- referral for physical therapy or other medically indicated treatment.

9. Order Defendants to provide basic, reasonable pain-mitigation supports within 72 hours, subject to security screening, including:

- an orthopedic or medically appropriate mattress accommodation if available through medical channels, or a medically reasonable substitute;

- medically appropriate pillow/support accommodations where approved;

- evaluation for orthopedic inserts if medically indicated and permissible.


10. Order Defendants to consider, based on medical assessment and institutional policy, whether ongoing chiropractic adjustments and/or spinal decompression (or medically equivalent therapy available within BOP) is medically necessary, and to provide medically equivalent treatment if the same modalities are not feasible.

### E. Records, Communication, and Monitoring

11. Order Defendants to preserve and produce to undersigned counsel within 72 hours: (a) Mr. Wimbish's Health Services records from December 19, 2025, to present; (b) documentation of sick-call requests, triage notes, and provider encounters related to constipation and back pain; and (c) any incident logs reflecting denied access to medical for these complaints.

12. Order Defendants to permit counsel to communicate with an identified Health Services point-of-contact regarding compliance with the Court's Order.

### VII.   REQUEST FOR EXPEDITED BRIEFING AND HEARING

Mr. Wimbish respectfully requests expedited consideration and, if the Court deems necessary, an emergency hearing at the earliest available time, including by videoconference, given the imminent risk of serious harm.

### VIII.  LOCAL RULE 7.1 CONFERRAL STATEMENT

Undersigned counsel certifies that due to the emergent nature of the requested relief and the reported refusal to connect counsel's representative with Health Services, counsel has been unable to meaningfully confer with Defendants prior to filing. Counsel's consultant attempted to reach Health Services on December 29, 2025; was refused; was transferred to the Operations Lieutenant; and no follow-up

was received. Counsel's consultant also left numerous voicemails for identified Bureau counsel without response. Counsel stands ready to confer immediately upon receipt of contact information for Defendants' counsel.

## IX.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Emergency Motion and enter the proposed TRO and/or Preliminary Injunction requiring immediate off-site medical evaluation and appropriate treatment, and other narrowly tailored relief to prevent ongoing and imminent constitutional injury.

Dated: January 1, 2026                          Respectfully submitted,

By:____*/s/ David Seltzer*____
DAVID SELTZER
Florida Bar #782041
10750 NW 6th Court 2nd Floor
Miami, Florida 33168
Tel: 305.444.1565
Fax: 305.444-1665

/s/ Elizabeth Franklin-Best
Elizabeth Franklin-Best, P.C.
SC ID # 72555, Fed ID #9969
3710 Landmark Drive, Suite 113
Columbia, South Carolina 29204
elizabeth@franklinbestlaw.com
(803) 445-1333

## CERTIFICATE OF SERVICE

I hereby certify that on January 1, 2026, a true and correct copy of the foregoing was filed using CM/ECF and/or served by email and/or U.S. Mail on counsel for Defendants (or, if none has appeared, on the U.S. Attorney's Office, Southern District of Florida), and on the Federal Bureau of Prisons/FCI Miami Low as required.

_/s/ David Seltzer_
DAVID SELTZER